RECEIVED
NOV 1 4 2005


UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

STEVEN JOSEPH

VS.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

CIVIL ACTION NO. 05-0020

MAGISTRATE JUDGE METHVIN
BY CONSENT OF THE PARTIES

## MEMORANDUM RULING

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, the court concludes that there is no substantial evidence to support the ALJ's finding that Joseph is not disabled. Accordingly, the Commissioner's decision is **REVERSED**.

### *Background*

Born on June 11, 1974, Steven Joseph ("Joseph") is currently 31 years old. Joseph completed the twelfth grade in special education classes. Joseph has worked in the past as a construction worker. On January 14, 2003, Joseph applied for disability benefits and supplemental security income, alleging disability beginning May 1, 2001 due to a broken hip, broken wrist, a plate in his leg, and a broken collarbone he suffered in an automobile accident.[1] Joseph's application was denied on initial review, and an administrative hearing was held on July 1, 2004.[2] In an opinion dated September 10, 2004, the ALJ denied benefits on grounds that Joseph retained the capacity to perform light work, and therefore, he was not disabled.[3] The

---

[1] Tr. 48-50, 65, 176-177.

[2] Tr. 185-209.

[3] Tr. 14-23.

Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner from which Joseph now appeals.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

### *ALJ's Findings*

The ALJ determined that the combination of Joseph's history of a broken hip, borderline intellect, and lumbar strain/sprain constitute a severe impairment.[4] Although Joseph can not perform his past work, the ALJ concluded that Joseph can perform light level work that was not

---

[4] Tr. 16.

complex.[5] Applying the Medical Vocational Guidelines, the ALJ concluded that Joseph was not disabled.

### *Assignment of Errors*

Joseph alleges that the ALJ erred in: 1) not finding that he meets the requirements of Listing 12.05(c) for mental retardation; and 2) in discounting his complaints of pain.

### *Findings and Conclusions*

After a review of the entire record and the briefs of the parties, and pursuant to 42 U.S.C. § 405(g), the court concludes that the ALJ's findings and conclusions are not supported by substantial evidence in the record.

## **Appendix 1 Listing**

Joseph maintains that the ALJ erred in not finding that he meets the requirements for an Appendix 1 listing for adults, 20 C.F.R., Part 404, § 12.05. The requirements for mental retardation under §12.05 are as follows:

> *Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or defendant are satisfied.
>
> \*\*\*
>
> (C) A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

---

[5] Tr. 20.

4

In order to meet the listing, the impairment must satisfy the "diagnostic description in the introductory paragraph and any one of the four sets of criteria [paragraphs A, B, C, D]." 20 C.F.R., Part 404, § 12.00A. The Regulations state that "[t]he results of standardized intelligence tests may provide data that help verify the presence of mental retardation or organic mental disorder, as well as the extent of any compromise in cognitive functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 12.00(C)(6)(a). Nevertheless, because "the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." Id.

In the instant case, at the request of the Disability Determination Services ("DDS"), Joseph underwent a psychological evaluation by Sandra Durdin, a clinical psychologist.[6] A Wechsler Adult Intelligence Scale III yielded a full-scale IQ score of 71, verbal IQ of 76 and performance IQ of 70. Dr. Durdin noted that Joseph can read, care for his personal needs, and manage funds. Dr. Durdin's impression was that Joseph had borderline intellectual functioning. Dr. Durdin concluded:

> Mr. Joseph did not give evidence of a serious mental disorder. He has learning problems and complains of chronic pain. He is limited to simple repetitive jobs by intellect. He can understand and follow directions and has an average pace. He is persistent when he works and is pleasant in terms of social interaction. He has no serious impulse control problems. He can participate in management of funds as he has in the past.[7]

---

[6] Tr. 94A-96.

[7] Tr. 95-96.

Joseph maintains that since he had a performance IQ of 70 and had a broken hip and lumbar strain that limits him to light duty work, he meets the requirements of § 12.05(C). The Commissioner contends that although Joseph meets the requirements of paragraph C, he does not meet the introductory paragraph to § 12.05, which defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning."

It is clear that an IQ of 70 reflects subaverage intelligence, as the Regulations note that general intelligence tests have a mean of 100. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 12.00(C)(6)(c). Moreover, Joseph was in special education classes while in school.[8] Thus, prior to the age of 22, Joseph was not functioning in normal classes, but rather, he was required to attend special education classes. This supports a finding that he had deficits in adaptive functioning prior to 22 years of age.

Accordingly, the undersigned concludes that Joseph meets the requirements of § 12.05(C).[9] This finding is not in conflict with Dr. Durdin's report indicating that Joseph does not have a "serious mental disorder" as the undersigned likewise does not find that Joseph meets the listing requirements for psychosis or other organic mental disorders. Rather, the court's conclusion that Joseph meets § 12.05(C) is supported by Dr. Durdin's report which contained a performance IQ score of 70, which Dr. Durdin concluded was valid.[10] Considering this score,

---

[8] Tr. 189-190.

[9] In the case at bar, the ALJ found that the combination of Joseph's history of a broken hip, borderline intellect, and lumbar strain/sprain constitute a severe impairment. In fact, the ALJ found that Joseph's residual functional capacity was limited to light work. Moreover, Joseph's additional impairments do not have to be disabling in and of themselves. Instead, the issue is whether the impairment is only a slight abnormality which has such minimal effects on Weston that it would not be expected to interfere with her ability to work. *See* Stone v. Heckler, supra. The ALJ's own finding is that Joseph had severe impairments in addition to his mental impairment.

[10] Tr. 95.

combined with the information regarding Joseph's deficits in adaptive functioning prior to age 22, and his impairments which impose additional and significant work-related limitations, the court finds that substantial evidence does not support the ALJ's finding that Joseph does not meet or equal a listing impairment.[11] Accordingly, the ALJ erred in finding that Joseph was not disabled, and Joseph is awarded social security benefits consistent with an onset date of May 1, 2001.[12]

### *Conclusion*

Considering the foregoing, the Commissioner's decision is **REVERSED.**

Signed at Lafayette, Louisiana on _November 9_, 2005.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

---

[11] The court notes that despite the IQ score of 70, the ALJ did not address whether Joseph met or equaled § 12.05(C), but rather only addressed § 12.02.

[12] Joseph maintains that the ALJ erred in discounting his complaints of pain because Joseph had not been prescribed medication to treat severe pain. As the court has found that Joseph is disabled, the additional ground for appeal need not be considered.